733 So.2d 1020 (1999)
William Gary HARVARD, a/k/a/ Darrell Small, Petitioner,
v.
Harry K. SINGLETARY, etc., Respondent.
No. 93,877.
Supreme Court of Florida.
May 6, 1999.
*1021 William Gary Harvard, a/k/a Darrell Small, pro se, Milton, Florida, for Petitioner.
No appearance, for Respondent.
PER CURIAM.
Petitioner William Gary Harvard filed an "Emergency Petition for Writ of Habeas Corpus." Petitioner Harvard, who is incarcerated at Martin Correctional Institution, claims to have been incorrectly assigned to Close Management status, a restrictive level of confinement, and seeks to be reassigned to a less restrictive confinement status. In support of his claim, he sets forth numerous factual allegations.[1] Although we have original jurisdiction to issue writs of habeas corpus, prohibition, mandamus, and quo warranto, our jurisdiction is discretionary. See art. V, § 3(b)(7),(8),(9), Fla. Const. Our jurisdiction is also concurrent with the jurisdiction of the district courts of appeal and the circuit courts. See art. V, §§ 4(b)(3), 5(b); see generally State ex rel. Scaldeferri v. Sandstrom, 285 So.2d 409, 411 (Fla. 1973). For the reasons that follow, we decline to exercise our jurisdiction in this case and elect to transfer the petition to a more appropriate court. By doing so, we are exercising the discretion granted to us by the Florida Constitution.
We take the opportunity to explain that, in the future, we will likewise decline jurisdiction and transfer or dismiss writ petitions which, like the present one, raise substantial issues of fact or present individualized issues that do not require immediate resolution by this Court, or are not *1022 the type of case in which an opinion from this Court would provide important guiding principles for the other courts of this State. If, however, we are able to determine on the face of the petition that the claim is successive or procedurally barred, we will continue our practice of denying those petitions.
In the last year alone, this Court has received well over 500 petitions for extraordinary relief. The overwhelming majority of these petitions were filed by prisoners seeking to invoke this Court's original writ jurisdiction pursuant to article V, section 3(b)(7), (8) and (9) of the Florida Constitution. This case is but one example.
As is true of many of these writ petitions, a review of the instant petition suggests that the resolution of this case could very well require fact-finding, a task this Court is ill-equipped to handle. See State ex rel. Watkins v. Fernandez, 106 Fla. 779, 788, 143 So. 638, 641 (1932). Clearly, such cases should be handled by the circuit courts because they often concern issues specifically related to matters occurring in the circuit and the circuit court would be in the best position to quickly and efficiently resolve such problems.
In the past, this Court has declined to exercise its jurisdiction over extraordinary writ petitions raising substantial issues of fact and has dismissed without prejudice or transferred such cases to the appropriate circuit court. See, e.g., State ex rel. International Ass'n of Firefighters, Local 2019 v. Board of County Comm'rs, 254 So.2d 195, 196 (Fla.1971)(transferring petition to the circuit court due to the need for fact-finding); State ex rel. Harris v. Gautier, 108 Fla. 390, 415-16, 147 So. 846, 847 (1933)(dismissing mandamus petition without prejudice to pursuing remedy in circuit court because, although Court has concurrent jurisdiction, it has no facilities to take testimony and determine disputed material questions of fact); see also State ex rel. Clark v. Klingensmith, 126 Fla. 124, 129-30, 170 So. 616, 618 (1936)(noting "three acknowledged methods of disposing of an original case in quo warranto [in an appellate court] where there are issues of fact to be tried:" (1) decline jurisdiction without prejudice to filing in the circuit court, (2) dismiss without prejudice to proceeding in the circuit court, and (3) appoint a commissioner of the court "to take testimony and refer it back to the appellate court, together with his findings, which are advisory only"). Indeed, in Watkins, 106 Fla. at 788, 143 So. at 641, this Court stated:
While we hold that the relator brought the proper action ... we think that there are patent reasons why we should not retain jurisdiction of the cause. In the first place, the Circuit Court has coordinate jurisdiction with this Court to grant the writ, the issues are such that testimony will have to be taken ... and ... [t]his Court ... has no facilities for taking testimony. It was never intended that it perform the function of a nisi prius court; this being peculiarly within the province of the Circuit Court. If we take original jurisdiction in this contest, other matters of similar character will press us for attention to such an extent that the appellate work will be very much delayed.
We now reiterate and reaffirm this longstanding practice.
In addition to declining to exercise jurisdiction because the appropriate disposition of this case will likely require the resolution of disputed issues of fact, we also decline to exercise our jurisdiction in this case because it presents individualized issues that do not require immediate resolution by this Court and are not of the type requiring guidance from this Court in order to be properly resolved.
In the past, with a view toward alleviating the burden on the trial courts, we have often chosen to exercise the original writ jurisdiction we share with the circuit courts and district courts and have reviewed *1023 and disposed of petitions which, like Harvard's, present issues of very little significance to the state of the law in Florida as a whole. It has become apparent, however, that our efforts are neither timesaving nor efficient. Many prisoner petitions are successive, and a large number are completely without merit. Moreover, there is no assurance that a petitioner who files a claim in this Court has not already filed similar claims in the trial and appellate courts or that the petitioner will not file a similar claim in another of this State's courts after filing here.
The very review of these petitions by this Court to make these preliminary determinations requires the expenditure of substantial time that would otherwise be devoted to the performance of our unique duties as the State's highest court. Meanwhile, the number of original writ petitions filed in this Court continues to rise.
Common sense dictates that we reserve our exercise of original writ jurisdiction for cases which require this Court's specific or immediate attention.[2] As with our policy of transferring petitions raising substantial issues of fact, this is not a new concept. We have declined jurisdiction over writ petitions and other analogous proceedings in the past for similar reasons.[3] We have done so even in ongoing capital cases. For example, in State v. Preston, 376 So.2d 3, 4-5 (Fla.1979), a capital case where the death penalty had not yet been imposed, we declined jurisdiction and transferred an interlocutory appeal, which we treated as a petition for writ of certiorari, because the issues raised were not unique to death cases and there was no compelling reason that they could not be reviewed in the district court. Based on the rationale in Preston, in Sybers v. State, No. 91,198 (Fla. Oct. 10, 1997), by unpublished order, we transferred to the district court a writ of prohibition seeking the disqualification of a trial judge in an ongoing capital case. In light of the fact that we have declined to address routine issues in cases where the death penalty could be imposed, it makes little sense to continue addressing such issues in other contexts.
By announcing a policy to be applied generally to all similar types of cases, we are not engaging in an entirely new practice. We have announced policies for handling particular types of cases before. In Baggett v. Wainwright, 229 So.2d 239, 243-44 (Fla.1969), for example, this Court discussed the importance of directing petitions to the most appropriate court and announced a policy of transferring habeas petitions seeking relief on the basis of a deprivation of the right to appeal to the district court empowered to provide full appellate review. The Court recognized that its jurisdiction over habeas petitions was not exclusive and explained that the transfer of such a petition was the best way to achieve an "effective but expedient *1024 procedural machinery for spreading the judicial labor so as not to overburden any particular court or judicial body." Id. at 243.
To further these same objectives, we now wish to reaffirm our policy of declining to exercise jurisdiction over writ petitions that do not raise issues which require resolution by this State's highest Court. Accordingly, we have determined that transfer to the proper circuit court is the most appropriate disposition of this case. We emphasize that by transferring this case, we are not dismissing petitioner's cause of action, or in any way defeating his ability to bring his claims before a court. We are simply transferring petitioner's case to a more appropriate court, due to the nature of the issues presented.
We also wish to emphasize that we are not transferring the instant petition because we deem petitioner's claim to lack significance. We simply find that his claims are more appropriately dealt with in the circuit court. In addition, as with every case we transfer, we have confidence that our circuit and district courts will endeavor to ensure that every litigant's case is carefully and promptly reviewed, and we believe that the transferee court will resolve this case with as much care and diligence as due process dictates.
Finally, we emphasize that this Court has not curtailed its own writ jurisdiction by this decision. On the contrary, we will continue to be vigilant to ensure that no fundamental injustices occur. If we determine that such an injustice may be occurring which cannot be appropriately addressed by transferring the petition, we may decide that action by this Court is necessary. In this case, however, whether petitioner Harvard was improperly assigned to Close Management does not present such an issue.
Therefore, in the instant case, we hereby decline to exercise our jurisdiction and elect to transfer the petition to the Nineteenth Judicial Circuit Court, in and for Martin County.[4] The transfer of this case should not be construed as an adjudication or comment on the merits of the petition, a determination as to the transferee court's jurisdiction, or a determination that the petition has been properly titled as a petition for writ of habeas corpus. Further, if it is determined that a filing fee is applicable to this petition, and if the petitioner wishes to proceed in forma pauperis in the transferee court, an affidavit of indigency and accompanying documentation shall be filed by the petitioner in the transferee court.
It is so ordered.
HARDING, C.J., SHAW, ANSTEAD and PARIENTE, JJ., and KOGAN, Senior Justice, concur.
WELLS, J., concurs in result only.
OVERTON, Senior Justice, dissents with an opinion.
OVERTON, Senior Justice, dissenting. I dissent.
By this opinion, the majority has substantially reduced the access to this Court for habeas corpus petitioners. It has, by this opinion, rewritten article V, section 3(b)(9), Florida Constitution. That provision provides as follows:
(b) JURISDICTION.-The supreme court:
. . . .
(9) May, or any justice may, issue writs of habeas corpus returnable before the supreme court or any justice, a district court of appeal or any judge thereof, or any circuit judge.
The majority opinion states that this Court will not accept jurisdiction in habeas corpus petitions "that do not require immediate resolution by this Court" and explains that these petitions may be heard by other *1025 courts. Majority op. at 2. To me, this is a clear restriction on this Court's habeas corpus jurisdiction.
The habeas corpus provision is not like our mandamus or quo warranto jurisdiction that contains specific language limiting the Court's jurisdiction. In section 3(b)(8), those writs are limited only to "state officers and state agencies," this Court having no jurisdiction to issue writs to any local governmental entities, e.g., counties, municipalities, school boards or special districts.
Habeas corpus jurisdiction is basic to our legal heritage. It is so basic that the authors of our habeas corpus jurisdiction made it unique with regard to this Court because it states that habeas corpus jurisdiction may not only be exercised by the entire Court, but it may also be exercised by a single justice. It is the only jurisdictional provision that gives authority to an individual justice. The provision also takes particular care to address the problem of resolving substantial issues of fact, a concern of the majority, by allowing the Court or any justice to make the writ returnable to "any circuit judge."
My deep concern is that the effect of the majority opinion will be to deny habeas corpus jurisdiction to individual petitioners who file these petitions without the help of a lawyer. It appears to me that from now on the only habeas corpus petitions this Court will consider will be those filed by attorneys for their clients.
Further, I disagree with the analysis. I do not believe it proper to include cases of other extraordinary writ remedies in with the analysis of habeas corpus cases. For instance, mandamus is already limited in the constitution to state officials or state agencies in addition to the fact that mandamus is limited to issues of law, not to matters of discretion, and consequently, fact finding is not involved with that process. Habeas corpus is different and very distinct from other extraordinary writs.
I believe this Court is sending the wrong message to the public in restricting its citizens in seeking habeas corpus access through the constitutionally provided jurisdiction given to this Court. While it is true that a great number of these types of petitions are denied, it is also true that some of these petitions are resolved after this Court only asks for a response from the party holding the petitioner.
In conclusion, I dissent from the substantial restrictions imposed by the majority on this Court's habeas corpus jurisdiction. It will have the effect of denying access to this Court.
NOTES
[1] Harvard alleges that he has exhausted available administrative remedies. If he had not, we would have dismissed his petition. See generally Shevin ex rel. State v. Public Service Comm'n, 333 So.2d 9, 12 (Fla.1976)(explaining that the extraordinary remedy of mandamus is unavailable unless no other adequate remedy exits); Sutton v. Strickland, 485 So.2d 25 (Fla. 1st DCA 1986) (holding that a petitioner's challenge to his confinement status through writ of habeas corpus was subject to dismissal where the petitioner failed to exhaust administrative remedies through the Department of Corrections' inmate grievance procedure).
[2] We will, of course, continue to exercise our jurisdiction in cases where, despite the individualized nature of the claim, the petition raises matters within this Court's exclusive jurisdiction. See, e.g., State v. Fourth Dist. Court of Appeal, 697 So.2d 70 (Fla.1997)(holding this Court has exclusive jurisdiction over collateral proceedings in death penalty cases).
[3] Compare State v. Preston, 376 So.2d 3, 4-5 (Fla.1979)(transferring to district court an interlocutory appeal, treated as a petition for writ of certiorari, in a capital case where death penalty had not yet been imposed because issues involved were not unique to death cases and there was no compelling reason this Court should hear the case), and State ex rel. Ake v. Swanson, 116 Fla. 464, 464, 156 So. 481, 481 (1934)(denying writ of mandamus without prejudice and with leave to prosecute same in circuit court where it appeared "that no sufficient reason exists why the Supreme Court should take original jurisdiction of this matter"), with Brown v. Firestone, 382 So.2d 654, 662 (Fla.1980)(finding constitutional questions surrounding the governor's vetoes to be an important issue justifying the Court's exercise of discretion), and Division of Bond Fin. v. Smathers, 337 So.2d 805, 807 (Fla.1976)(exercising writ jurisdiction due to the importance of immediately determining the constitutionality of the current general appropriations act).
[4] See Alachua Reg'l Juvenile Detention Ctr. v. T.O., 684 So.2d 814, 816 (Fla.1996) (finding that proper circuit court venue for habeas petition is in county where prisoner is held).