FARMER, J.
The Department of Agriculture and Consumer Services (DOA) appeals an order of the circuit court granting a temporary injunction. In the process the court held unconstitutional various aspects of the 2002 amendments to sections 581.184 and 933.02 dealing with DOA’s authority to eradicate citrus canker. See Ch.2002-11, Laws of Fla. The order concludes that the statutory amendments impair important constitutional rights of property owners of citrus trees throughout the state. The order also finds that the 1,900-feet zone prescribed by the statute for the elimination of healthy trees exposed to citrus canker is implicitly irrational in that it is not based on acceptable scientific principles or methodology. It enjoins DOA from enforcing the statute as written and places several limitations on its power to seek search warrants in its eradication program.
DOA has suggested an immediate transfer of this appeal under Florida Rule of Appellate Procedure 9.125 to the Supreme Court. DOA makes the following *780 argument for such extraordinary treatment:
“There exists an emergency in Florida as a result of the continuing spread of citrus canker which is threatening the state’s $9 billion citrus industry. A delay in the recommencement of the [DOA eradication] Program, particularly given the heightened] risk of long distance spread of the canker bacteria during Florida’s rainy summer months, potentially will add millions of dollars to the eradication costs and will result in more citrus trees being removed than if [DOA] is able to proceed expeditiously. After nearly two years of litigation, and although [DOA] has requested expedited consideration at every step, this situation remains unresolved and the program remains at a virtual standstill.
[[Image here]]
“The plaintiffs in this case have crippled [DOA’s] effort to eradicate citrus canker, and caused [DOA] to divert significant time and money to court proceedings rather than Program implementation. In the meantime, interruptions to eradication efforts have allowed the citrus canker bacteria to spread from Miami-Dade County to Broward County to Palm Beach County, and northward, at alarming rates. The canker spreads most rapidly in windy and rainy weather, and the worst season for inhibiting the spread is Florida’s rainy summer. After nearly two years of litigation in administrative and judicial forums, the eradication program is still at a virtual standstill. [DOA], and the citrus industry of Florida, need a determination by the state’s court of last resort as to whether the program can go forward.”
The department adds that by transferring this appeal now the Supreme Court will then have before it both aspects of the litigation against the program, including the third district’s decision regarding the state’s obligation to pay compensation for all trees destroyed. See Patchen v. State Dep’t of Agric. & Consumer Serv., 817 So.2d 854 (Fla. 3d DCA 2002).
Appellees respond that a transfer to the Supreme Court at this time would be improvident. They argue that the order in question is nonfinal, merely granting a temporary injunction to preserve the status quo. Only after a trial, they say, will the record be fully enough developed for a decision by the court of last resort. It is indeed true that the injunction entered by the trial court is labeled “temporary” in the injunction itself, as well as in three later orders clarifying it in various respects. Nonetheless we conclude that the order is, as DOA argues, a partial final judgment on the constitutionality of certain aspects of the citrus canker statutory amendments.
There is no doubt from a careful reading of the 31-page order granting the temporary injunction that constitutionality issues have for all practical purposes been finally declared and adjudicated by the trial judge. For a long time now, this court has required that a party seeking an injunction before trial demonstrate that there is a substantial likelihood that the party will succeed on the merits of its claim to in-junctive relief. See, e.g., Reinhold Constr. Inc. v. City Council, Vero Beach, 429 So.2d 699 (Fla. 4th DCA 1983); 3299 N. Federal Highway, Inc. v. Board of County Comm’rs of Broward County, 646 So.2d 215, 222 (Fla. 4th DCA 1994); Infinity Radio Inc. v. Whitby, 780 So.2d 248 (Fla. 4th DCA 2001); Yachting Promotions, Inc. v. Broward Yachts Inc., 792 So.2d 660 (Fla. 4th DCA 2001). Although the requirement of a “substantial likelihood of success” was not mentioned in the partial final order, we have no reason to suppose that the trial judge did not consider it. In *781 fact when the entire order is considered it is apparent that he concluded that plaintiffs were clearly entitled to an injunction as regards the search warrants newly allowed by the 2002 statutory amendments. Appellees acknowledge that there is nothing left to decide as regards the constitutional “search and seizure” issue. We therefore regard that issue as having been finally decided and now subject to plenary review.[1]
We do not have much in the way of guidance as to when and under what circumstances we should exercise our discretion under rule 9.125 to send a case immediately to the Supreme Court for resolution. When we do so, we thereby bypass the constitutional right to review in the district courts of final judgments of the circuit courts. Thus it should be rare that we consider doing so.
The two reported decisions under rule 9.125 each have their own features. One involved issues relating to death penalty applications, a subject within the Supreme Court’s exclusive jurisdiction. See State v. Hootman, 697 So.2d 1259 (Fla. 2d DCA), revieio granted, 699 So.2d 1375 (Fla.1997). In fact, the primary reason given by the second district for the transfer in Hoot-man was the Supreme Court’s death penalty jurisdiction. The demise of citrus trees is, however, understandably not included within that subject. The other decision, Bismark v. State, 796 So.2d 584 (Fla. 2d DCA 2001), involved an issue that conceivably affected every plea in criminal eases within this state. The effect of that decision on the administration of justice would seem manifest.
This court had its own experience under rule 9.125, of course, in an immediate transfer in the 2000 Presidential Election Cases. It is not necessary today that we explore the justification for that transfer, beyond averring the undeniable singularity of those cases. In short, the Presidential Election Cases do not offer much in the way of guidance for today’s question.
Apart from DOA’s argument for an immediate transfer is the impact of both the timing and the effect of any decision we may make. The amount of time that we as a reflective and contemplative institution might ultimately take to reach a final decision is uncertain — even if we were to expedite the case. During the time we take to review the matter, DOA will be limited by the terms of the injunction in its enforcement of the new legislative provisions. Moreover, DOA argues that citrus canker cases can hardly be expected to be limited to south Florida because the blight is spreading steadily northward, and news accounts at the very time we write this opinion report the finding of at least one infected tree in the Orlando area. Surely, whether we ultimately sustain the trial judge’s decision or agree with DOA, a substantial number of Florida residents, not to mention the trees, will be significantly and adversely affected. Whatever we do will affect the handling of citrus canker cases filed throughout the state.
In any event, no matter how many people or businesses or eases are affected, our word is most unlikely to be the final one. Whether we agree that the statutory scheme as regards the search and seizure issues is invalid or not, we will almost certainly certify the case to the Supreme Court as being of great public importance. Hence the time spent on our decision here will likely be seen in the end by many as superfluous.
*782 Upon consideration, therefore, we hereby certify that this appeal requires immediate resolution by the Supreme Court because the issues pending in this district court are of great public importance or will have a great effect on the proper administration of justice throughout the state.[2]
KLEIN and STEVENSON, JJ„ concur.

. We recognize that other constitutional issues, especially those relating to whether the state has properly concluded that there is a sufficient public purpose in taking healthy trees uninfected with citrus canker, are not yet ripe for review.

. We have deliberately made no decision on the pending motion to review the trial court’s decision to vacate the stay of its temporary injunction and the motion for leave to appear as amicus curiae. It seems more appropriate for those matters to be decided by the court passing on the merits.